UNITED STATES DISTRICT COURT     **ELECTRONICALLY FILED**
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
PETER F. GAITO ARCHITECTURE, LLC d/b/a   08 Civ. 6056 (WCC)
PETER F. GAITO AND ASSOCIATES, and
PETER F. GAITO,

     Plaintiffs,

  -against-

SIMONE DEVELOPMENT CORP., SIMONE
CHURCH STREET LLC, JOSEPH SIMONE,
THOMAS METALLO, SACCARDI & SCHIFF,
INC., TNS DEVELOPMENT GROUP LTD.,
and SLCE ARCHITECTS, LLP,

     Defendants.
--------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP §12(b)(6) and 28 U.S.C. § 1367 (c)(3)


     MILBER MAKRIS PLOUSADIS
      & SEIDEN, LLP
     Attorneys for Defendant
     SLCE ARCHITECTS, LLP
     3 Barker Avenue, 6th Floor
     White Plains, New York 10601
     (914) 681-8700

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1 – 2

RELEVANT FACTUAL & PROCEDURAL HISTORY ................................................... 2 – 3

ARGUMENT ................................................................................................................. 4 – 14

      A.  Standard of Review of a 12(b)(6) Motion ......................................................... 4 – 5

      B.  Copyright Infringement, Generally ................................................................... 5 – 7

      C.  Copyright Infringement with Respect to Architectural Plans ......................... 7 – 8

      D.  The SLCE Plans are not Substantially Similar ................................................ 8 – 14

CONCLUSION ................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

- *Attia v. Society of the New York Hospital*, 201 F.3d 50 (2d Cir., 1999) .......................8, 11, 14

- *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, 2007 WL 708798 (E.D.N.Y., No. 2:05-cv-711) ........................................................................................................ 6, 7, 8

- *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (U.S., 2007) ........................... 4

- *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir., 2001) ................................................. 7

- *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir., 2002) ................................... 5

- *Danielson v. Winchester-Conant Properties, Inc.*, 186 F.Supp.2d 1 (D.C., Mass., 2002) ... 8

- *Feist Publications v. Rural Telephone Services Co.*, 499 U.S. 340, 111 S.Ct. 1282 (1991) .. 6, 8, 11

- *Figueroa v. City of Camden*, 2008 WL 4427979 (D.N.J., No. 08-CV-59) ................ 4

- *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.,1994) ....... 5

- *Greenberg v. Town of Falmouth*, 2006 WL 297225 (D.Mass., No. Civ.A. 04-11934) ... 8

- *GVA Market Neutral Masters LTD. v. Veras Capital Partners Offshore Fund, LTD.*, 2008 WL 4449366, (S.D.N.Y., No. 07 Civ. 0519) ...................................................................... 4, 5

- *Hamil America, Inc. v. GFI*, 193 F.3d 92 (2d Cir., 1999) ........................................... 6

- *Hernandez v. Two Brothers Farm, LLC*, 2008 WL 4405409 (S.D. Fla., No. 08-20398-CIV) .. 4

- *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241 (11 Cir., 1999) ....................... 6, 7, 8, 14

- *In re Pfizer Inc. Securities Litigation*, 2008 WL 2627131 (S.D.N.Y., No. 04 Civ. 9866) ... 4, 5

- *Jorgensen v. Epic/Sony Records*, 351 F.3d 46 2d Cir., 2003) ...................................... 6

- *Landrau v. Solis Betancourt*, 554 F. Supp.2d 102 (U.S.D.C., P.R., 2007) .................. 5, 6

- *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir., 2007) ......................... 5

- *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) ....................... 8

- *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F.Supp.2d 1148 (S.D. Fla., 2006) .. 6, 7, 8, 11, 14

- *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) ... 8, 11

- *Shine v. Childs*, 382 F.Supp.2d 602 (S.D.N.Y. 2005) ................................................ 7

- *Silberstein v. Fox Entertainment Group, Inc.*, 424 F.Supp.2d 616 (S.D.N.Y, 2004) .. 6

- *Sturdza v. United Arab Emirates*, 281 F.3d 1287 (U.S.D.C., D.C. 2002) ................. 7

- *Williams v. Crichton*, 84 F.3d 581 (2d Cir., 1996) ................................................... 6

## FEDERAL STATUTES/RULES

- FRCP §12(b)(6) ......................................................................................... 1, 4

- Title 17 USCA ............................................................................................ 1

## Treatises

- 2A Moore & Lucas, *Moore's Federal Practice* ......................................................... 5

This brief is submitted in support of the motion by the Defendant, SLCE ARCHITECTS, LLP (hereinafter referred to as "SLCE") pursuant to FRCP §12(b)(6) seeking an Order dismissing, with prejudice, the Amended Complaint[1] of the Plaintiffs, PETER F. GAITO ARCHITECTURE, LLC d/b/a PETER F. GAITO AND ASSOCIATES and PETER F. GAITO (hereinafter referred to collectively as "Plaintiffs"), dated November 5, 2008 (hereinafter referred to as the "Amended Complaint") as asserted against SLCE.


## PRELIMINARY STATEMENT

It is respectfully submitted that, as is demonstrated in further detail herein below, the instant motion by SLCE to dismiss the Amended Complaint as asserted against SLCE (hereinafter referred to as the "Instant Motion") should be granted in its entirety inasmuch as the sole cause of action directed against SLCE, for alleged copyright infringement, fails to state a claim upon which relief can be granted.

More specifically, when comparing Plaintiffs' architectural designs[2] and specifications[3] (hereinafter referred to collectively, at times, as the "Plaintiffs' Plans") with SLCE's architectural plans ("hereinafter referred to as the "SLCE Plans")[4], it is apparent that: 1) any perceived similarities between the two sets of plans are of such a generalized nature that they are not protected under the Copyright Law, Title 17 to the United States Code Annotated; and 2) the SLCE Plans are so dissimilar to the Plaintiffs' Plans that a lay observer would not conclude that the SLCE Plans had been copied from the Plaintiffs' Plans.  Therefore, it is respectfully

---

[1] See Exhibit "F".
[2] See Exhibit "H".
[3] See Exhibit "I".
[4] See Exhibit "J".

submitted that the Instant Motion should be granted in its entirety and the Amended Complaint dismissed as asserted against SLCE.

## <u>RELEVANT FACTUAL AND PROCEDURAL HISTORY</u>

On or about August 12, 2004, the City of New Rochelle (hereinafter referred to, at times, as the "City") began soliciting proposals for the mixed-use redevelopment of a City owned garage, located at Church and Division Streets (hereinafter referred to as the "Church/Division Lot") in downtown New Rochelle (hereinafter referred to, at times, as the "Project")[5]. While the initial solicitation by the City only specifically referenced the redevelopment of the Church/Division Lot, the City apparently contemplated redevelopment of an adjacent parking lot located on Prospect Street (hereinafter the "Prospect Lot")[6] and subsequently amended the Project to include same.[7]

Plaintiffs allege that, in response to the City's solicitation for Project proposals, they drafted a design concept and plans for the mixed use redevelopment of the Church/Division Lot and the Prospect Lot.[8] The Plaintiffs' Plans were then presented to the City on or about November 1, 2004, by the Plaintiffs and several Defendants in a joint venture (hereinafter referred to as the "Joint Venture"); JOSEPH SIMONE, THOMAS METALLO, TNS DEVELOPMENT GROUP, LTD and SIMONE DEVELOPMENT CORP. (hereinafter collectively referred to as the "Simone Defendants").[9]

---

[5] See Exhibit "G", p. 1, and Exhibit "F", ¶ "20".
[6] In this regard, it should be noted that the City's "Request for Development Proposals", Exhibit "G", includes a map of downtown New Rochelle which delineates the Project site as the Church/Division Lot <u>and</u> the Prospect Lot. Hereinafter the Church/Division Lot and the Prospect Lot shall hereinafter be referred to collectively as the "Project Lot").
[7] See Exhibit "H", p. 13 (under section entitled "Design Concept and Approach"), and Exhibit "J", p. I-2.
[8] See Exhibit "F", ¶ "32".
[9] See Exhibit "F", ¶ "53"

Subsequently a dispute arose between the Plaintiffs and the Simone Defendants which, according to the Plaintiffs, revolved around Plaintiffs' compensation for drafting Plaintiffs' Plans and resulted in a termination of the Joint Venture.[10]  Moreover, as the Simone Defendants had been awarded the Project by the City, they retained SLCE to replace the Plaintiffs and to draft their own design concept for the Project resulting in the creation of the SLCE Plans.[11]

Believing that the SLCE Plans had been copied from the copyrighted Plaintiffs' Plans[12], the Plaintiffs commenced the instant action on or about July 14, 2008 with the filing of a Summons and Complaint.[13]  After being served with the Summons and Complaint, SLCE obtained an extension of time to interpose an answer up to and including August 22, 2008.[14]  The Simone Defendants then requested, by letter dated August 21, 2008, that this Honorable Court schedule a pre-motion conference given the lack of merit of the plaintiffs' claims.[15]  SLCE joined in the request for a pre-motion conference by letter dated August 22, 2008.[16]

Therefore, following Plaintiffs' request for a pre-motion conference[17], a conference was held before this Honorable Court on November 4, 2008 during which time the Plaintiffs were granted permission to serve an amended Summons and Complaint and the defendants were granted permission  to file pre-answer motions to dismiss.  While the Plaintiffs served the Amended Complaint on or about November 5, 2008, as is discussed further below, Plaintiffs' claim against SLCE still fails, as a matter of law, and therefore SLCE now moves, by way of the Instant Motion, to dismiss the Amended Complaint as asserted against SLCE.

---

[10] See Exhibit "F", ¶¶ "82" – "83"
[11] See Exhibit "F", ¶¶ "81", "84" – "89".
[12] See Exhibit "F", ¶¶ "63" – "65", "131" – "204"
[13] See Exhibit "A".
[14] See Exhibit "B".
[15] See Exhibit "C".
[16] See Exhibit "D".
[17] See Exhibit "E".

## ARGUMENT

### A.      Standard of Review on a 12(b)(6) Motion

The Federal Rules of Civil Procedure, at §12(b), set forth seven defenses that a party may raise by motion, the sixth of which is the "failure to state a claim upon which relief can be granted".[18]

As was noted by the Second Circuit:

> "[o]n a motion to dismiss, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims' ... In other words, 'the office of a motion to dismiss is merely to **assess the legal feasibility** of the complaint, **not** to assay the weight of the **evidence which might be offered in support thereof**'."

*GVA Market Neutral Masters LTD. v. Veras Capital Partners Offshore Fund, LTD.*, 2008 WL 4449366, *4 (S.D.N.Y., No. 07 Civ. 0519) (emphasis added, internal citations omitted).  *See, also, In re Pfizer Inc. Securities Litigation*, 2008 WL 2627131 (S.D.N.Y., No. 04 Civ. 9866).

It is well settled that in order to survive a 12(b)(6) motion, the plaintiff must demonstrate facts to support their claim, although the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (U.S., 2007).  *See, also, GVA Market Neutral Masters LTD. v. Veras Capital Partners Offshore Fund, LTD.*, supra; *Figueroa v. City of Camden*, 2008 WL 4427979 (D.N.J., No. 08-CV-59); *Hernandez v. Two Brothers Farm, LLC*, 2008 WL 4405409 (S.D. Fla., No. 08-20398-CIV); *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir., 2007).

---

[18] See FRCP §12(b)(6).

Furthermore, when deciding a motion to dismiss pursuant to FRCP §12(b)(6), the Court is constrained to view all factual allegations in a light which is most favorable to, and make all reasonable inferences in favor of, the plaintiff.  *See GVA Market Neutral Masters LTD. v. Veras Capital Partners Offshore Fund, LTD.*, supra; *In re Pfizer Inc. Securities Litigation*, supra; *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir., 2007); *Landrau v. Solis Betancourt*, 554 F. Supp.2d 102 (U.S.D.C., P.R., 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir., 2002); *Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001).

This having been said, "conclusions of law or unwarranted deductions of fact are not [deemed] admitted."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.,1994) citing 2A Moore & Lucas, *Moore's Federal Practice* ¶ 12.08, at 2266-69 (2d ed. 1984).  *See, also, GVA Market Neutral Masters LTD. v. Veras Capital Partners Offshore Fund, LTD.*, supra.; *Landrau v. Solis Betancourt*, supra.  It is respectfully submitted that even when viewing all allegations in the Amended Complaint, asserted against SLCE, in a light which is most favorable to the Plaintiffs, those claims fail as a matter of law.

**B.     Copyright Infringement, Generally**

Even though the Amended Complaint asserts three (3) causes of action, only the first cause of action pertains to SLCE, namely alleged copyright infringement of Plaintiffs' Plans, the alleged elements of which are discussed in further detail below.[19]

Generally speaking, in order to prevail on a claim for copyright infringement, the plaintiff(s) must demonstrate two general elements: 1) that the plaintiff owns a valid copyright;

---

[19] See Exhibit "F".

and, 2) that the defendant(s) in fact copied said copyrighted material. *See Feist Publications v. Rural Telephone Services Co.*, 499 U.S. 340, 111 S.Ct. 1282 (1991); *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, 2007 WL 708798 (E.D.N.Y., No. 2:05-cv-711); *Landrau v. Solis Betancourt*, supra; *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F.Supp.2d 1148 (S.D. Fla., 2006); *Williams v. Crichton*, 84 F.3d 581 (2d Cir., 1996).

As was noted by the District Court of Puerto Rico:

> "[t]o establish the second element, 'plaintiff must show (a) that the **defendant** actually **copied the work** as a factual matter, either through direct evidence or through indirect means, **and** (b) that the defendant's **copying** of the copyrighted material was so extensive that it **rendered** the infringing and copyrighted **works 'substantially similar'**.'"

*Landrau v. Solis Betancourt*, supra, *111 (emphasis added, internal citations omitted). *See, also, Feist Publications v. Rural Telephone Services Co.*, supra; *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, supra; *Jorgensen v. Epic/Sony Records*, 351 F.3d 46 2d Cir., 2003); *Hamil America, Inc. v. GFI*, 193 F.3d 92 (2d Cir., 1999).

With respect to establishing that the copyrighted work was copied, Courts have routinely held that the plaintiff(s) merely needs to establish that the defendant had access to the materials or a reasonable opportunity to copy same. *See Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, supra; *Oravec v. Sunny Isles Luxury Ventures L.C.*, supra; *Silberstein v. Fox Entertainment Group, Inc.*, 424 F.Supp.2d 616 (S.D.N.Y, 2004); *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241 (11 Cir., 1999). It is respectfully submitted that although the

Plaintiffs have alleged facts sufficient to demonstrate access to the Plaintiffs' Plans by SLCE[20], at the end of the day, the SLCE Plans are not substantially similar to Plaintiffs' Plans and, as such, the Instant Motion should be granted in its entirety.

### C.    Copyright Infringement With Respect to Architectural Plans

As was noted by the District Court for the Eastern District of New York:

> "[f]ront and center of a finding of infringement is the issue of 'substantial similarity'.  In assessing substantial similarity, a factfinder applies the 'ordinary observer test' and asks '**whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other**' ...  In applying the ordinary observer test, '(g)ood eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts'."

*Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, supra, * 11, (emphasis added, internal citations omitted).  *See also Oravec v. Sunny Isles Luxury Ventures L.C.*, supra; *Herzog v. Castle Rock Entertainment*, supra.

In applying the ordinary observer/intrinsic test, the Court looks to the overall designs, as a whole, rather then focusing on specific elements.  *See Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, supra; *Shine v. Childs*, 382 F.Supp.2d 602 (S.D.N.Y. 2005); *Sturdza v. United Arab Emirates*, 281 F.3d 1287 (U.S.D.C., D.C. 2002); *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir., 2001).

While the ordinary observer/intrinsic test compares the subject works as a whole, the extrinsic test focuses on the individual elements and whether they are substantially similar.  *See*

---

[20] See Exhibit "F", ¶¶ "121" – "125".  Please note that this does not constitute an admission by SLCE that it had

*Oravec v. Sunny Isles Luxury Ventures L.C.*, supra; *Herzog v. Castle Rock Entertainment*, supra;

*Attia v. Society of the New York Hospital*, 201 F.3d 50 (2d Cir., 1999).  This having been said:

> "[t]here are elements of a copyrighted work that are not protected
> even against intentional copying.  It is a fundamental principle of
> our copyright doctrine that ideas, concepts, and processes are not
> protected from copying.  *See Peter Pan Fabrics, Inc. v. Martin
> Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960) ... *Nichols v.
> Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)."

*Attia v. Society of the New York Hospital*, id., *54

　　As was noted in *Greenberg v. Town of Falmouth*, 2006 WL 297225 (D.Mass., No.

Civ.A. 04-11934):

> "[T]he aspect of architectural design that is protected is the gestalt
> of the plans including things like an architect's choices regarding
> shape, arrangement, and location of buildings, the design of open
> space, the location of parking and sidewalks, and the combination
> of individual design elements"

Id., * 3 (citing *Danielson v. Winchester-Conant Properties, Inc.*, 186 F.Supp.2d 1 [D.C., Mass.,

2002]).  *See also Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, supra.  This having

been said, generalized design concepts/ideas are not protected, only the architects expression of

such concepts/ideas are.  *See Feist Publications v. Rural Telephone Services Co.*, supra; *Attia v.

Society of the New York Hospital*, supra; *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, supra.

## D.　　The SLCE Plans are Not Substantially Similar to the Plaintiffs' Plans

　　It is respectfully submitted that when comparing the Plaintiffs' Plans side-by-side with

the SLCE Plans, it is obvious that, on a whole, the plans are not similar and therefore Plaintiffs

access to or copied Plaintiffs' Plans.

8

claim against SLCE fails the ordinary observer/intrinsic test.[21]   In this regard, both the SLCE Plans and Plaintiffs' Plans include the construction of residential units, a parking garage and park on the Project Lot.[22]   However, the SLCE Plans have a single residential tower while the Plaintiffs' Plans call for the construction of three separate buildings.

Moreover, while both plans call for the construction of a residential tower and although Plaintiffs allege that the towers share common elements[23], the tower in the SLCE Plans is visibly different from the one in the Plaintiffs' Plans.  As a prime example of the dissimilarity, the tower in the Plaintiffs' Plans (hereinafter referred to as the "Plaintiffs' Tower") maintains the same width from the base of the building to its roof while the tower in the SLCE Plans (hereinafter referred to as the "SLCE Tower") calls for three distinct "plateau-ing" levels.

Furthermore, the side of the Plaintiffs' Tower contains superfluous, wavy trimming running horizontally along the side of the tower while the SLCE Tower lacks any such ornate trimming.  Given the obvious divergent appearances between the Plaintiffs' use of three (3) buildings versus SLCE's use of a single tower and the blatant differences between the SLCE Tower and the Plaintiffs' Tower, it is respectfully submitted that Plaintiffs' claim against SLCE fails the ordinary observer/intrinsic test.

Turning next to the extrinsic test, it is respectfully submitted that all of the design elements, which Plaintiffs' allege SLCE copied and/or are substantially similar to the Plaintiffs' Plans, are of such a general nature that they are not protected under the Copyright Law.  In this

---

[21] Compare the photographs/renderings in Exhibits "H" and "I" with Exhibit "J".
[22] As discussed further below, though Plaintiffs content that the placement of the park and the parking garage demonstrate that SLCE copied Plaintiffs' Plans, the parking garage in both set of plans merely replaces the existing parking lot on the Prospect Lot and the parks are not similarly laid out.
[23] See Exhibit "F", ¶¶ "168" – "181".

regard, the Plaintiffs set forth several alleged similarities between the plans at paragraphs "131" through "204" of the Amended Complaint, namely:

(1)     Placement, general layout, capacity and adaptability of a parking garage on the Prospect Lot;

(2)     The number of "onsite"[24] parking spaces;

(3)     The incorporation of a landscaped public plaza on the main level;

(4)     A connection between the plaza and the Prospect Lot;

(5)     The use of public art;

(6)     The abandonment of Clinton Place between Division Street and Church Street;

(7)     The procurement of more Project space by purchasing properties on Main Street;

(8)     The square footage of retail and commercial/professional space;

(9)     The location and adaptability of retail space;

(10)    The general design and orientation of the residential tower (the SLCE Tower versus the Plaintiffs' Tower);

(11)    The construction of a park on the Prospect Lot; and

(12)     The floor-area-ratio.

As was discussed above, common/generalized design concepts/ideas are not protected, only the architects expression of such concepts/ideas are.  *See Feist Publications v. Rural Telephone Services Co.*, supra; *Attia v. Society of the New York Hospital*, supra; *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, supra; *Oravec v. Sunny Isles Luxury Ventures L.C.*, supra. For example, in *Attia v. Society of the New York Hospital*, supra, the Court noted that generalized concepts, which are not protected under the Copyright Law, include "where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely upon".[25]

In *Oravec v. Sunny Isles Luxury Ventures L.C.*, supra, the Court held that incorporation of an elevator shaft, unless identical in aesthetic style and incorporation into the building itself, was not a protected element of a copyrighted work.[26]  The Court likewise found the:

> "use of a twin tower design, circular plaza and see-through units are not copyrightable architectural elements ... [since] Each of these elements are either **common themes or standard features in the realm of architecture**".[27]

Respectfully, the specific items listed in the Amended Complaint, and above, which Plaintiffs claim SLCE copied from Plaintiffs' Plans are blatantly generalized such that they are not protected by the Copyright Law.  However, each is examined below to underscore the fact that Plaintiffs' claim against SLCE is baseless.

---

[24] It appears from reviewing the Amended Complaint that Plaintiffs' references there to "on site" means the Church/Division Lot.  See Exhibit "F".

[25] *Attia v. Society of the New York Hospital*, supra (specific page number not delineated in the decision, but quotation appears on page "6" of printed version of same).

[26] See *Oravec v. Sunny Isles Luxury Ventures L.C.*, supra, * 1170.

[27] See *Oravec v. Sunny Isles Luxury Ventures L.C.*, supra, * 1170 – 1171 (emphasis added).

With respect to the allegations concerning SLCE's use of a parking garage on the Prospect Lot (no. "1")[28], a review of said allegations fails to reveal any <u>specific</u> design criteria/style supposedly copied by SLCE, rather they are all generalized.   In this regard, Plaintiffs alleged that SLCE copied the following: a) the very creation of a new garage[29]; b) the use of 859[30] parking spaces[31]; c) an exit/entry from Central Avenue[32]; d) the use of a pre-cast masonry façade[33]; e) the "greening" of the façade[34]; f) the location of the elevator tower near the corner of LeRoy Place and Division Street[35]; g) landscaping with a sensitivity to the Davenport Lofts[36]; h) the façade designed as the backdrop for the new park[37]; i) the use of landscaping along LeRoy Place[38]; and j) designed to allow for expansion of the parking garage.[39]

It is respectfully submitted that of the foregoing alleged similarities, "b", "c", "f" and "j"[40] are clearly generalized in that they all deal with general layout, flow of traffic and adaptability of the proposed parking lot on the Prospect Lot.   Alleged similarity "a" is, respectfully, a total farce inasmuch as the Prospect Lot already had a parking lot which the new parking garage merely replaces.[41]   With respect to alleged similarities "d" and "i", it is respectfully submitted that the Plaintiffs' allegations fail to specify distinct aspects for these

---

[28] Please note that hereinafter references, such as this, to "no. _" shall indicate the number assigned herein, above, to the list elements SLCE allegedly copied from the Plaintiffs.
[29] See Exhibit "F", ¶¶ "133" – "134".
[30] It should be noted that page "2" of the "Overall Square Footage Summary" in Plaintiffs' Plans (at Exhibit "H") indicates that the parking garage has only 528 spaces, not 859.
[31] See Exhibit "F", ¶¶ "140" – "141".
[32] See Exhibit "F", ¶¶ "142" – "143".
[33] See Exhibit "F", ¶¶ "182" – "183".
[34] See Exhibit "F", ¶¶ "184" – "185".
[35] See Exhibit "F", ¶¶ "186" – "187".
[36] See Exhibit "F", ¶¶ "188" – "189".
[37] See Exhibit "F", ¶¶ "190" – "191".
[38] See Exhibit "F", ¶¶ "194" – "195".
[39] See Exhibit "F", ¶¶ "192" – "193".
[40] Please note that references such as this refer to the foregoing list of alleged similarities in the proposed parking garage.

12

aesthetic choices which are protected, or even similar, and, as such, they are clearly not protected aspects of the Plaintiffs' Plans.[42]  Turning to alleged similarities "e", "g" and "h", a review of SLCE's Plans fails to reveal any such specifications/specific delineations and it appears that the Plaintiffs have merely attempted to impute their design concerns upon SLCE's Plans.[43]

With respect to the number of "onsite" parking spaces (no. "2"), the use of a connection between the Church/Division and the Prospect Lot (no. "4"), the square footage of retail and commercial/professional space (no. "8"), the location and adaptability of retail space (no. "9") and the floor-area-ratio[44] (no. "13"), same clearly deal with layout of the Church/Division Lot, demonstrating no originality in Plaintiffs' Plans, and, as such, are likewise not protected under the Copyright Law.  The same can be said, from an aesthetic standpoint, concerning the incorporation of a plaza on the main level (no. "3"), the use of public art (no. "5") and the general design/orientation of the SLCE Tower[45] (no. "10").

While Plaintiffs allege that SLCE copied their plan for the creation of a new park on the Prospect Lot (no. "11"), a comparison of the designs for these two respective parks fail to reveal any similarities between the two other than being parks and being on the same lot.[46]  Lastly, with respect to proposed abandonment of Clinton Place between Division Street and Church Street (no. "6") and the proposed procurement of property along main street, it is respectfully submitted

---

[41] See Exhibit "J", page "I-2".
[42] Again, it should be noted that SLCE does not concede that it had access to or copied Plaintiffs' Plans.
[43] See Exhibit "J".
[44] It should likewise be noted that the floor-area-ratio, which Plaintiffs allege demonstrates that the SLCE Plans were copied off the Plaintiffs' Plans, said floor-area-ration is the maximum ratio allowed under the local zoning (see Exhibit "J", p. "I-4").
[45] As is noted above, the SLCE Tower, other than being a tower, does not look similar to the Plaintiffs' Tower.  This is underscored by the fact that, apart from their different appearance, the **SLCE Tower has 42 floors and 455 units** (see Exhibit "J", p. "I-4") and the **Plaintiffs' Tower has only 30 Floors and 360 units** (see Exhibit "H", "Overall Square Footage Summary").
[46] Compare Exhibit "J", "Exhibit 24" with Exhibit "I", schematic drawing "A2.5".

that these amount to nothing more than generalized proposals for the Project and do not demonstrate substantially similar designs.

In this regard, the Amended Complaint fails to demonstrate any specific similarities between the two sets of plans and, moreover, a comparison of the plans fails to reveal any specific similarities in these proposals.  Furthermore, it should be noted that the map contained in the City's solicitation for Project proposals[47] does not depict Clinton Place running between Division Street and Church Street and, as such, it is respectfully submitted that: 1) such a connection did not exist at the time the City solicited proposals for the Project; or 2) the City intended, all along, to abandon said section of Clinton Place.

Therefore, respectfully, the alleged similarities between the SLCE Plans and the Plaintiffs' Plans fail to pass the extrinsic test.  *See Oravec v. Sunny Isles Luxury Ventures L.C.*, supra; *Herzog v. Castle Rock Entertainment*, supra; *Attia v. Society of the New York Hospital*, supra.

## CONCLUSION

It is respectfully submitted that, as demonstrated herein, the alleged similarities between the SLCE Plans and the Plaintiffs' Plans fail the ordinary observer/intrinsic test as well as the extrinsic test.  As such, it is further submitted that, irrespective of the sufficiency of allegations in the Amended Complaint, the SLCE Plans are not substantially similar to the Plaintiffs' Plans and neither further amendment to the Plaintiffs' Complaint/claims nor the exchange of discovery will change this fact that.  Therefore, the Instant Motion should be granted in its entirety.

---

[47] See Exhibit "G".

Dated:  White Plains, New York
            November 19, 2008

**MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP**

By: s/_____
      Christopher A. Albanese (CAA 0145)
      Attorneys for Defendant
      SLCE Architects, LLP
      3 Barker Avenue, 6th Floor
      White Plains, New York 10601
      (914) 681-8700
      e-mail: calbanese@milbermakris.com

TO:     Austin Graff, Esq.
        THE SCHER LAW FIRM, LLP
        Attorneys for Plaintiff
        One Old Country Road, Suite 382
        Carle Place, New York 11514
        (516) 746-5040

        Scott M. Salant, Esq.
        COLLIER, HALPERN, NEWBERG,
          NOLLETTI & BLOCK, LLP
        Attorneys for the Defendants
        SIMONE DEVELOPMENT CORP.,
        SIMONE CHURCH STREET LLC,
        JOSEPH SIMONE, THOMAS METALLO
        and TNS DEVELOPMENT GROUP, LTD.
        1 North Lexington Avenue
        White Plains, New York 10601
        (914) 684-6986

        Harris B. Katz, Esq.
        WINGET, SPADAFORA &
          SCHWARTZBERG, LLP.
        Attorneys for the Defendant
        SACCARDI & SCHIFF, INC.
        45 Broadway, 19th Floor
        New York, New York 10006
        (212) 221-6900

15
