ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X

PETER F. GAITO ARCHITECTURE, LLC d/b/a PETER F. GAITO AND ASSOCIATES; and PETER F. GAITO,

Plaintiffs,

- against -

SIMONE DEVELOPMENT CORP.; SIMONE CHURCH STREET LLC; JOSEPH SIMONE; THOMAS METALLO; SACCARDI & SCHIFF, INC.; TNS DEVELOPMENT GROUP, LTD.; and SLCE ARCHITECTS, LLP,

Defendants.

- - - - - - - - - - - - - - - - - - - - X

08 Civ. 6056 (WCC)

**ECF CASE**

**OPINION**
**AND ORDER**

**A P P E A R A N C E S :**

THE SCHER LAW FIRM, LLP
**Attorneys for Plaintiffs**
One Old Country Road, Suite 385
Carle Place, New York 11514

AUSTIN GRAFF, ESQ.

Of Counsel

COLLIER, HALPERN, NEWBERG, NOLLETTI & BOCK, LLP
**Attorneys for Defendants Simone Development Corp., Simone Church Street LLC, Joseph Simone, Thomas Metallo and TNS Development Group, Ltd.**
One North Lexington Avenue
White Plains, New York 10601

PHILIP M. HALPERN, ESQ.

Of Counsel

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**Copies E-Mailed to Counsel of Record**

A P P E A R A N C E S : (continued)

WINGET, SPADAFORA & SCHWARTZBERG, LLP
**Attorneys for Defendant Saccardi & Schiff, Inc.**
45 Broadway, 19th Fl.
New York, New York 10006

MATTHEW TRACY, ESQ.
ADAM D. GLASSMAN, ESQ.

Of Counsel

MILBER MAKRIS PLOUSADIS & SEIDEN, LLP
**Attorneys for Defendant SLCE Architects, LLP**
Three Barker Avenue, 6th Fl.
White Plains, New York 10601

CHRISTOPHER A. ALBANESE, ESQ.

Of Counsel

**CONNER, Senior D.J.:**

Plaintiffs Peter F. Gaito Architecture, LLC d/b/a Peter F. Gaito and Associates ("Gaito and Associates") and Peter F. Gaito ("Gaito" and, together with Gaito and Associates, "plaintiffs") bring this action against defendants Simone Development Corporation ("SDC"), Joseph Simone ("Simone"), Thomas Metallo ("Metallo"), TNS Development Group Ltd. ("TNS"), Simone Church Street LLC, ("Simone Church Street" and, together with SDC, Simone, Metallo and TNS, "the Simone defendants"), Saccardi & Schiff Inc. ("Saccardi & Schiff") and SLCE Architects, LLP ("SLCE" and, together with the Simone defendants and Saccardi & Schiff, "defendants") to recover damages for alleged copyright infringement.[1] Defendants now move to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6). For the reasons stated herein, defendants' motion is granted.

## BACKGROUND

Plaintiffs allege the following in their Amended Complaint.

SDC is a real estate development corporation, of which Simone is the president. (Am. Complt. ¶¶ 15-16.) Gaito and Associates is an architectural and planning firm. (*Id.* ¶ 17.) In August 2004, Gaito and Associates received from the City of New Rochelle ("New Rochelle") a request for proposal for the development of the air rights above the Church Division Garage, located in downtown New Rochelle (the "Church Street Project"). (*Id.* ¶ 20.) Prior to receipt of the request

[1] Plaintiffs also initially sought a permanent injunction and punitive damages and they asserted a cause of action for unjust enrichment. Plaintiffs voluntarily withdrew these claims on November 10, 2008, after New Rochelle voluntarily dropped the Church Street Project altogether.

for proposal, Gaito contacted Simone to discuss submitting a joint proposal for the Church Street Project. (*Id.* ¶¶ 21-22.) Gaito and Simone had "numerous communications regarding the role each would play in the joint effort" to become the developers for the Church Street Project and, pursuant to those conversations, Gaito agreed to design and draft the architectural plans as well as to create a video presentation for the Church Street Project and Simone agreed to secure the financing for the project. (*Id.* ¶¶ 22-29.) Upon Gaito's information and belief, Simone subsequently invited Metallo and TNS to join in the effort to "win the designation as the developer on the [Church Street] Project." (*Id.* ¶¶ 30-31.) "As requested by [the Simone defendants]," plaintiffs proceeded to design, delineate, draft and develop a proposal for the Church Street Project. (*Id.* ¶¶ 32-52.)

On November 1, 2004, plaintiffs and the Simone defendants submitted plaintiffs' design, in the name of SDC, to New Rochelle. (*Id.* ¶ 53.) Plaintiffs' design was one of approximately six designs submitted to New Rochelle in connection with the Church Street Project. (*Id.* ¶ 54.) On January 12, 2005, plaintiffs and the Simone defendants together presented a video of plaintiffs' design to New Rochelle. (*Id.* ¶¶ 55-56.) Following that presentation, New Rochelle narrowed the list of designs that it would thereafter consider for the project from six to three; the design presented by plaintiffs and the Simone defendants was among the final three. (*Id.* ¶ 57.) On February 8, 2005, plaintiffs and the Simone defendants made a second presentation to New Rochelle and, on March 11, 2005, New Rochelle awarded the Church Street Project to them, for an estimated price of $175,000,000. (*Id.* ¶¶ 58-60.)

On April 5, 2005, Gaito duly registered plaintiffs' design for the Church Street Project with the United States Copyright Office and, on the same day, the United States Copyright Office issued to him exclusively: (1) a "Certification of Registration for Published Work bearing the registration

number VA # 1-330-925"; (2) a "Certification of Registration for Technical Drawings bearing the registration number VA # 1-330-926"; and (3) a "Certification of Registration for Architectural Work bearing the registration number VA # 1-330-927." (*Id.* ¶¶ 62-65.)

Plaintiffs' design provided for: (1) "the floor-area-ratio to be 5.5"; (2) "a thirty-four (34) story glass tower condominium with Four Hundred Twenty-One (421) apartments"; (3) "an eight (8) story mid-rise residential building"; (4) "a series of shops set in attached low-rise buildings at street level that would accommodate Forty-Four Thousand Two Hundred (44,200) square feet of retail"; (5) "a portion of the glass tower [that] was designed above the low-rise retail level and brownstone buildings, [and] which would be topped with a public 'green space' at the second floor level"; (6) "twenty-five (25) high-end duplex units in the brownstone buildings"; (7) "an underground parking facility to accommodate Six Hundred Thirty-Two (632) cars"; (8) "a new aboveground four (4) story garage with a Five Hundred Thirty-Eight (538) car City-managed parking facility"; and (9) "a new park." (*Id.* ¶¶ 66-75.)

On or about November 22, 2005, Simone formed the limited liability company, Simone Church Street, of which he "is a member" and registered it with the New York State Department of State. (*Id.* ¶¶ 76-77.) Upon plaintiffs' information and belief, Simone Church Street "entered into a Memorandum of Understanding with [New Rochelle] as the developer for the [Church Street] Project." (*Id.* ¶ 81.) In approximately June 2005, a dispute arose among Simone, SDC and plaintiffs regarding plaintiffs' compensation for their architectural work on the Church Street Project and, following that dispute, Simone and Metallo terminated their relationship with plaintiffs. (*Id.* ¶¶ 82-83.)

The Simone defendants then retained the services of SLCE, an architecture and planning

firm, and Saccardi & Schiff, a planning firm, to continue the Church Street Project. (*Id.* ¶¶ 84-88, 90-94.) Plaintiffs allege that SLCE is now the architect on the Church Street Project and Saccardi & Schiff is now the planner for the Church Street Project. (*Id.* ¶¶ 89, 95.) Plaintiffs also allege that defendants are "using [Gaito's] copyrighted [] [d]esigns for the [Church Street] Project without [Gaito]'s authorization." (*Id.* ¶¶ 96-109.)

Plaintiffs allege that defendants had access to their design for the Church Street Project because: (1) plaintiffs provided the Simone defendants with a copy of the design on November 1, 2004 and, "[a]fter the dispute [among Simone, SDC] and [Gaito] ended their relation in or about June 2005, [Simone] did not return [to plaintiffs] the copies of [plaintiffs' design]"; (2) plaintiffs provided Saccardi & Schiff with copies of the design on June 3, 2005, receipt of which was confirmed by Saccardi & Schiff on June 6, 2005, and Saccardi & Schiff has not returned the copies of the design to plaintiffs; (3) the Simone defendants and Saccardi & Schiff provided plaintiffs' design to SLCE; and (4) the Simone defendants and Saccardi & Schiff provided plaintiffs' design to Simone Church Street. (*Id.* ¶¶ 110-30.)

Plaintiffs allege the following violations of Gaito's registered copyright. Plaintiffs' design provided the floor-area-ratio to be 5.5; SLCE's re-design provides for the floor-area-ratio to be 5.5. (*Id.* ¶¶ 131-32.) Plaintiff's design included the creation of a new, off-site "Prospect Parking Garage;" SLCE's re-design includes the creation of a new "Prospect Parking Garage," which is similar in size and in the exact location as plaintiffs' design. (*Id.* ¶¶ 134-37.) Plaintiffs' design included 632 parking spaces, below ground, for residential and retail use; SLCE's re-design includes 632 on-site parking spaces for residential and retail use, but the spaces are above ground. (*Id.* ¶¶ 138-39.) Both plaintiffs' design and SLCE's re-design for the "Prospect Parking Lot Garage"

provide for 859 parking spaces and a vehicular point of exit/entry from Centre Avenue. (*Id.* ¶¶ 140-43.) Both plaintiffs' design and SLCE's re-design feature a publicly-accessible, landscaped, street-level plaza. (*Id.* ¶¶ 144-45.) Plaintiffs' design included a water feature on the street-level plaza; SLCE's re-design includes a water feature "on the street level plaza below ground." (*Id.* ¶¶ 148-49.) Plaintiffs' design included on-site, above-ground parking for both residential and retail units; SLCE's re-design includes on-site parking for both residential and retail units "similar in size and location as [] [p]laintiff[s'] designs." (*Id.* ¶¶ 150-51.) Both plaintiffs' design and SLCE's re-design include public plaza space in similar locations. (*Id.* ¶¶ 152-53.) Both plaintiffs' design and SLCE's re-design provide for a plaza connection to the new Prospect Park in the same location and a plaza connection to the new Prospect Parking Garage, similar in size and location. (*Id.* ¶¶ 154-57.) Both plaintiffs' design and SLCE's re-design provide for the use of public art. (*Id.* ¶¶ 158-59.) Both plaintiffs' design and SLCE's re-design provide for the abandonment of Clinton Place between Church and Division Streets and for the purchase and removal of buildings along Main Street to enlarge the Church Street Project beyond the original specifications. (*Id.* ¶¶ 160-63.)

Both plaintiffs' design and SLCE's re-design include 44,000 square feet of retail space, 2,500 square feet of commercial/professional office space as well as active retail space at the base of the residential tower. (*Id.* ¶¶ 164-69.) Both plaintiffs' design and SLCE's re-design provide that retail spaces designated for boutique shops have the flexibility for a single tenant. (*Id.* ¶¶ 170-71.) Both plaintiffs' residential tower design and SLCE's residential tower re-design call for light, airy, transparent, glass architecture with "hints of traditional materials," a "slender profile" and an orientation so that the residential tower's longest side is perpendicular to Main Street. (*Id.* ¶¶ 172-77.) Both plaintiffs' design and SLCE's re-design of the residential tower call for apartments "to

be oriented to ensure Long Island Sound views" and for the residential units to include balconies. (*Id.* ¶¶ 178-81.)

Both plaintiffs' design and SLCE's re-design for the Prospect Lot Parking Garage provide for a pre-cast masonry facade, a greening of the facade "all around the garage" and a "main entry elevator stair entry tower" near the corner of Leroy Street and Division Street. (*Id.* ¶¶ 182-87.) In both plaintiffs' design and SLCE's re-design for the Prospect Lot Parking Garage, the Leroy Street side is landscaped and "sensitive" to the Davenport Lofts residents, the Division Street facade is designed as the "backdrop to the new park" and the garage is designed to accommodate future parking levels and to include public landscaped open space along LeRoy Place. (*Id.* ¶¶ 188-95.)

Both plaintiffs' design and SLCE's re-design include the creation of a new Prospect Park, "to be built adjacent to the new parking garage." (*Id.* ¶¶ 196-98.) Each of plaintiffs and SLCE, through their design and re-design, respectively, "intended that [Prospect] [P]ark be for general public use with recreational and retail opportunities," included the use of public art in the park and called for the park to be "gated and locked at night." (*Id.* ¶¶ 199-204.)

## DISCUSSION

### I. Legal Standard

A motion brought under FED. R. CIV. P. 12(b)(6) posits that plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *rev'd on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d

96, 100 (2d Cir. 2005); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.). In assessing the legal sufficiency of a claim, the Court may consider only the facts alleged in the complaint and any document attached as an exhibit to the complaint or incorporated in it by reference. *See* FED. R. CIV. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999); *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 69 (2d Cir. 1996).

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). The fact pleading standard is "a flexible 'plausibility standard[]' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d. Cir. 2007) (emphasis in original); *see Ello v. Singh*, 531 F. Supp. 2d 552, 562 (S.D.N.Y. 2007). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

## II. Standard for Copyright Infringement

In order to establish a claim for copyright infringement under 17 U.S.C. § 501, plaintiff must show that: (1) he owns the copyright at issue; (2) the copyright has been registered in accordance with the statute; and (3) the defendant copied constituent elements of the work that are original. *Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 550 (S.D.N.Y. 2007) (Conner, J.). In order to satisfy the third element, a plaintiff must establish that: (1) the defendant

has actually copied plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between defendant's work and the protectable elements of plaintiff's work. *Id.*, n.12, citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001).

## III. Plaintiffs' Claims Against Defendants

We accept, for purposes of this motion, that Gaito owns the copyright at issue and that the copyright has been registered to him in accordance with the Copyright Act. We also assume, for purposes of this motion only, that actual copying by defendants occurred.[2] Therefore, we turn now to the second part of the third prong of the test: whether substantial similarity exists between SLCE's re-design and the protectable elements of plaintiffs' design.

Where there is no substantial similarity between the works at issue, a copyright infringement claim should be dismissed for failure to state a claim. *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008); *Bell v. Blaze Magazine*, 2001 WL 262718, at *4 (S.D.N.Y. Mar. 16, 2001); *Boyle v. Stephens, Inc.*, 1998 WL 80175, at *4, 6 (S.D.N.Y. Feb. 25, 1998). In analyzing whether there is substantial similarity between plaintiffs' design and SLCE's re-design, we ask "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work . . . [in other words], the ordinary observer test is whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999) (internal citation omitted), quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274

---

[2] The Simone defendants also assume, for purposes of this motion, that actual copying occurred. (Simone Defs. Mem. Supp. Mot. Dismiss at 3.)

F.2d 487, 489 (2d Cir. 1960). In determining whether copyright infringement has occurred, "the works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings." *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986).

Plaintiffs' design and SLCE's re-design, which we now compare to determine whether they are substantially similar, are attached respectively to this Opinion as Exhibits A and B. In plaintiffs' design, the predominant feature is a high-rise building, which is essentially a rectangular slab, maintaining the same lateral dimensions from the top floor to several floors above the base. (Albanese Decl., Ex. H.) In SLCE's re-design, the predominant high-rise building is divided into distinct tiers or layers, stepped like a wedding cake, with the upper floors having substantially smaller floor area than the lower floors. (*Id.*, Ex. J.) Plaintiffs' design includes an apparently glass-roofed penthouse extending for substantially the full length of the longer dimension of the top of the building, whereas SLCE's re-design contains no comparable superstructure. Plaintiffs' design includes vertically spaced wave-like decorative ribbons extending across the broad face of the high-rise building, whereas SLCE's re-design has no similar ornamentation. In plaintiffs' design, the high-rise building does not appear to have balconies on its broad side, whereas SLCE's re-design includes balconies on the broad side at each floor of the building. In plaintiffs' design, the flat face of the broad side of the building does not continue to the base of the building, but at the four lowest floors is set back a substantial distance behind six widely spaced supporting columns in the same vertical plane as the face of the upper floors. The SLCE re-design has no comparable feature. The overall visual impressions of the two designs are entirely different. No reasonable juror would be "disposed to . . . regard their aesthetic appeal as the same.'" *Hamil Am.*, 193 F.3d at 100 (internal

quotation marks and citation omitted).

Plaintiffs allege a number of similarities between their design and SLCE's re-design, such as identical floor areas and number of parking spaces, provision of a public plaza, use of public art, provision of commercial, retail and residential space, orientation of the building to ensure water views and the creation of a park. (Am. Compl. ¶¶ 131-204.) But, except for floor area and number of parking spaces, all of these features are common to countless other urban high-rise residential developments. Plaintiffs did not originate them and have no right to exclude others from the use of any or all of them. Copyright law does not protect such abstract ideas or concepts, but only a specific expression or embodiment of them. "It is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying." *Attia v. Soc'y of N.Y. Hosp.*, 201 F.3d 50, 53-54 (2d Cir. 1999). "A copyright thus protects not the author's ideas, but only [his] expression of them." *Id*.

In *Attia*, plaintiff's concepts were truly novel and the defendant appropriated much more of them than was done in the present case. *Id*. at 51-53. The plaintiff's architectural firm was retained by New York Hospital to devise a plan for the modernization of its facilities on Manhattan's upper east side. *Id*. at 51-52. Plaintiff developed the novel concept of a new building constructed on a three-story high truss platform spanning the F.D.R. Drive and submitted two booklets of copyrighted architectural drawings presenting this concept. *Id*. at 52. The hospital adopted the concept and initiated a competition to select an architect to design a building embodying it. *Id*. Another firm - not plaintiff's - won the competition. *Id*. The final design employed a number of other concepts of plaintiff's submission, including "the use of truss technology . . . , the alignment of floor heights and corridors, the [insertion of a connecting roadway between 68th and 70th Streets to create] a continuous

traffic loop through the hospital complex, . . . the location of a pedestrian area and . . . the arrangement of space on particular floors." *Id*. at 56. Yet the Court of Appeals ruled that, while plaintiff's "booklets [did] undoubtedly contain creative ideas on how to extend New York Hospital over the F.D.R. Drive in a manner that would connect the [h]ospital's existing buildings with the new structure," the drawings were "highly preliminary and generalized," describing "[p]laintiff's proposed design at a very general level of abstraction" and were therefore not protectable. *Id*. at 55.

The *Attia* Court explained that, in cases involving architectural projects, "to the extent that [the] plans include generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on, these are 'ideas' that may be taken and utilized by a successor." *Id*. "On the other hand, to the extent that the copier appropriates not only those ideas but the author's personal expression of them, infringement may be found." *Id*. Therefore, reasoned the court, when comparing plaintiff's drawing with the allegedly infringing drawing of defendant, it is clear that "no more was taken than ideas and concepts" as plaintiff's drawing was "barely a first step toward the realization of a plan. How [its] and other ideas would be expressed or realized in a finished plan is not even approached in [p]laintiff's drawings." *Id*. at 56.

As in *Attia*, plaintiffs here allege only similarities of unprotected ideas. These similarities are inconsequential because it is evident from a comparison of plaintiffs' design and SLCE's re-design that these ideas are expressed in very different ways. Simply, no "average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Hamil Am.*, 193 F.3d at 100. Because there is no substantial similarity between plaintiffs' design and SLCE's re-design, plaintiffs have failed to state a claim for copyright infringement.

### A. Plaintiffs' State Claims Against the Simone Defendants

Plaintiffs also bring causes of action for *quantum meruit* and unjust enrichment, under New York State law, against the Simone defendants. Because plaintiffs have stated no federal claim for relief, we decline to exercise supplemental jurisdiction over plaintiffs' state claims. Plaintiffs' claims for *quantum meruit* and unjust enrichment are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants Simone Development Corporation, Joseph Simone, Thomas Metallo, TNS Development Group Ltd. and Simone Church Street LLC's motion to dismiss (Doc. #14) is granted, defendant SLCE Architects LLP's motion to dismiss (Doc. #15) is granted and defendant Saccardi & Schiff Inc.'s motion to dismiss (Doc. #23) is granted. Plaintiffs' claim for copyright infringement is dismissed with prejudice and their New York State claims are dismissed without prejudice. These dismissals are without costs or attorneys' fees.

SO ORDERED.

Dated: White Plains, New York
May 22, 2009

William C. Conner
Sr. United States District Judge

Exhibit A


Peter F. Gaito and Associates

Exhibit B



Exhibit 13

**PHOTOGRAPH SIMULATION 1**
**VIEW OF PROJECT SITE FROM MIDBLOCK ON CLINTON PLACE**

CHURCH/DIVISION MIXED USE DEVELOPMENT
New Rochelle, New York

SOURCE: SLCE Architects

*Saccardi & Schiff, Inc. - Planning and Development Consultants*